## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

JENNIFER LANCASTER, *et al.*,                                                              PLAINTIFFS,

v.                                        Case No. 2:24-cv-00161-BSM

JOHN THURSTON, in his official capacity as Secretary of State and as
Chairman of State Board of Election Commissioners, *et al.*,                  DEFENDANTS.

### BRIEF IN SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs' threadbare complaint is little more than an attempt to transform an intraparty dispute governed by party rules and state law into a federal constitutional challenge. Plaintiffs participated in the Republican Party of Arkansas's 2024 state convention, and they allege that convention voted to close the party's primary elections. RPA officials, they say, disagree that such a vote occurred, and Plaintiffs seek an order from this Court requiring Arkansas Secretary of State John Thurston and the State Board of Election Commissioners[1] ("SBEC") (collectively the "State Defendants") to take sides in that dispute. In particular, Plaintiffs claim that their failure to do so violated the First and Fourteenth Amendments—though they do not actually say how—and seek declaratory, mandamus, and injunctive relief compelling the State Defendants to "recognize" that the RPA has closed its primary elections and amended its rules.

Those claims fail for multiple independent reasons. First, Plaintiffs lack standing to bring these claims because their dispute is with other party members, not the State, and that dispute is far from ripe for judicial resolution. And in any event, Plaintiffs cannot bring their claims against Secretary Thurston because he does not have the legal authority to do what they want and ordering him to take sides in an intraparty dispute would not redress their supposed injury. Second,

---

[1] Plaintiffs have sued all of the members of SBEC except Commissioner Bilenda Harris-Ritter.

Plaintiffs' supposed First and Fourteenth Amendment claims fail as a matter of law because Arkansas law does not unduly burden Plaintiffs'—or any other RPA members'—speech, associational, or franchise rights.  Far from it, Arkansas law maximizes those rights—leaving parties and their members free to set membership requirements, determine primary-voting qualifications, and resolve their own disputes.  Indeed, if anything, it is Plaintiffs who seek to burden those rights by asking this Court to order Arkansas to take sides in an intraparty dispute.  And third, the Court should dismiss any remaining state-law claims because (1) Plaintiffs' requested remedy would violate *Pennhurst*, and (2) comity counsels against exercising supplemental jurisdiction.

## BACKGROUND

A.   <u>Political Party Regulations</u>

Arkansas's election regulations specify how political parties must generally be structured, but they leave the inner workings of parties up to the parties themselves.  State law provides that political parties shall "[e]stablish rules and procedures for their own organization."  Ark. Code Ann. 7-3-101(a)(3).  Those rules must include "the qualifications of their own membership" and "for voting in their party primaries."  Ark. Code Ann. 7-3-101(a)(1)-(2).  Those rules must also govern the selection of parties' officials.  The "national committeeman," Ark. Code Ann. 7-3-102, "members of the state committee," Ark. Code Ann. 7-3-103(a), "members of the county committee[s]," Ark. Code Ann. 7-3-104(a), and "[d]elegates to the county convention" must all "be elected in accordance with respective political party rules," Ark. Code Ann. 7-3-105.

Moreover, Arkansas law also largely defers to parties on how they select candidates.  *See* Ark. Code Ann. 7-7-201(d) (where "there is no applicable general election law," questions about how to conduct primary elections "shall be governed . . . by party rules").  While political parties

generally must select general election candidates by primary election, *see* Ark. Code Ann. 7-7-202(a); *but see* Ark. Code Ann. 7-7-104 (allowing in some instances for appointments by convention), under Arkansas law, "[e]ach political party may establish by party rules" the qualifications "for eligibility to vote in primary elections of the party," Ark. Code Ann. 7-7-307.  And parties must "hold a state convention following the biennial general primary election for the purpose of" certifying nominees from the winners of the primary election and "[p]erforming other duties as may be required by party rules or by law."  Ark. Code Ann. 7-3-107.

       B.    <u>Factual Allegations</u>

Plaintiffs' factual allegations are confusing, vague, and, at best, conclusory.  The amended complaint does allege that the RPA is an organized political party under Arkansas law.  Am. Compl. ¶ 7; Ark. Code Ann. 7-1-101(28).  It also alleges that Plaintiffs were delegates to the RPA's biennial state convention, which was held on June 8, 2024.  Am. Compl. ¶¶ 9-10.  But it provides clarity on little else and utterly fails to explain the basis for their legal claims.

Plaintiffs have attached a copy of the RPA rules that were in effect during the 2024 RPA State Convention.  *See* Compl. ¶ 2 & Ex. A; *see Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) ("[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.").  As Plaintiffs note, Am. Compl. ¶ 24, those rules provide that the state convention has the "final authority in all party matters," Compl. Ex. A. at 5.  Those rules, however, also contain multiple procedural restrictions to ensure that the state convention proceeds in an orderly manner and that party members, officials, and delegates have adequate notice of the convention's planned course of action.

As relevant here, members of the various committees, including the rules committee, must be appointed at least 90 days prior to the convention.  Compl. Ex. A. at 11.  "All proposed

rule changes and/or proposed platform provision shall be filed in writing with the appropriate committee at least 60 days prior to the convention." *Id.* The committees must send their "proposed rule changes and/or proposed platform resolutions recommended for adoption at the State Convention" to the county chairmen "30 days before the date of the convention" so the county chairmen can "inform delegates and alternates" of the proposed changes. *Id.* Then once the convention begins, it must "proceed in the order of business prepared by the Convention Rules Committee." *Id.* at 12. And while the RPA rules provide for suspension of the party rules during state committee meetings, *see id.* at 39 (requiring the approval of nine-tenths of members present), and local rules during county committee meetings, *see id.* at 26 (requiring nine-tenths approval), those rules do not provide any explicit authority for suspending the party rules during the state convention. *See id.* at 10-12. Additionally, while the rules give "final authority in all party matters" to the biennial convention, the convention "shall be deemed to have delegated such interim authority to the State Committee and Executive Committee as is necessary to carry out the purposes of the party." *Id.* at 5. This includes the duty of the "State Executive Committee" to "observe and enforce the[] [party] rules." *Id.* at 42.

Recognizing that, Plaintiffs amended complaint adds a gloss on those rules—arguing they ought to be interpreted to require only "RECOMMENDED proposed rules change[s]" be "circulated in advance." Am. Compl. ¶ 15. They claim that the "RPA rules are silent on how to treat unrecommended proposed rules changes," like Plaintiffs' proposals, and as a result, they argue, one must "look to Robert's Rules of Order which does not require circulation but for them to be reported." *Id.* ¶ 16. Yet Plaintiffs admit that—even were that the case—their proposed changes were not "reported by the Rules Chair." *Id.* ¶ 15.

Plaintiffs' complaint also provides scant details as to what they allege occurred during the 2024 RPA convention.  Plaintiffs do allege that an "overwhelming majority of State Convention delegates [] voted in favor of closing the Republican primaries to only registered Republicans." Compl. ¶ 20.  But they critically do not say how that vote occurred, what exactly the delegates voted on, or precisely what obligations they think that vote imposed.  They also allude to "the 2024-2026 Republican Party of Arkansas Rules and Platform" being "adopted at the State Convention," Compl. ¶ 14, but they do not attach that document to the complaint.  Nor do they say what those rules said.  And while the complaint contains vague references to the "automatic voting status of elected officials on the RPA's State Committee," Compl. ¶ 20; *see also* Compl. ¶¶ 25-26, 28, it fails to explain specifically what facts they are alleging or how they are relevant to any constitutional issue.

The remaining allegations in the complaint concern what Plaintiffs allege happened "after the Convention."  Am. Compl. ¶ 24.  They first allege that RPA Chairman Joseph Wood "refused to acknowledge the newly adopted Rules or Platform and refused to respond to the Convention Chairman's multiple emails, texts, and calls."  *Id.* ¶ 23.  Next, "after the Convention," the chair of the RPA "Rules Committee[] drafted an 'advisory opinion.'"  *Id.* ¶ 24.  Plaintiffs do not say anything about that opinion's content, what its effect was, or how it really relates to their claims.  The complaint then goes on to allege that the RPA State Executive Committee held a meeting and voted "to 'nullify' the motions passed by the convention body that were not previously approved and recommended by the Rules and Platform Committee" because those votes were "in violation of the RPA rules."  *Id.* ¶ 26.  After that vote, Plaintiffs allege that the RPA Chairman "sent out an email to party members informing them of the State Committee's vote," *id.* ¶ 32, and another email to "elected officials" regarding their "automatic voting authority on

the state committee," *id.* ¶ 33.  The same day, the "2024 Rules and Platform, as approved by the State Executive Committee, was published."  *Id.* ¶ 35.  Plaintiffs make no allegations about the contents of those documents.

As to Secretary Thurston's role in the process, Plaintiffs allege that he "has not closed the Republican Primaries or otherwise complied with the changes that were legally implemented by the Convention."  Am. Compl. ¶ 37.  But they do not explain what they believe Secretary Thurston was "otherwise" required to do in response to the "changes" they allege were made to the RPA rules at the convention.  At most, Plaintiffs claim that Secretary Thurston both "indicated that he will refuse to close the primaries," *id.* ¶ 45, because he was "not sure that's what the party really wanted to do," *id.* ¶ 14.  And they allege that for a change in party rules "to be effective," Secretary Thurston "must implement them."  *Id.* ¶ 45.  Yet they don't explain how Secretary Thurston is supposed to do that.  *See id.*

With the SBEC, Plaintiffs note that it "publishes rules governing how the county election commissioners are to conduct their elections in January of each year."  *Id.* ¶ 12.  Plaintiffs desire "injunctive relief requiring [SBEC] to implement rules and regulations designed to close the primaries."  *Id.* ¶ 46.

C.     Procedural History

Plaintiffs filed this lawsuit on August 26, 2024, seeking various declaratory, injunctive, and mandamus relief.  *See* Compl. ¶ 1.  Following motions to dismiss, they filed an amended complaint adding SBEC as defendants.  *See* Doc. 14.  The character of Plaintiffs' lawsuit has not changed.  They seek a declaration requiring the State Defendants to take sides in this intraparty dispute.  *See* Am Compl. ¶ 42.G–J.  They also ask the Court to declare that "[t]he actions of the defendants in failing to close the primaries" and "failing to adopt, recognize, publish or adhere to

the rule changes approved by the Convention" violates "Plaintiffs' "state and federal right to Due Process, Free Speech, Assembl[y], and fully participate in the elections and associate with other citizens." *Id.* ¶¶ 32.K–P, 37.  Plaintiffs seek injunctive relief "that the defendants may not fail to take immediate action to close the RPA's primaries and adopt, promulgate, and adhere to the rule changes." *Id.* ¶ 54.  Lastly, they seek mandamus relief "compelling the Defendants to comply with the law by closing the Republican Party's primaries" and "adopting or otherwise accepting the rules and platform changes adopted on June 8, 2024." *Id.* ¶¶ 58-59.  And in all cases, Plaintiffs utterly fail to explain how their factual allegations relate to those requests.

The State Defendants now move for dismissal.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of claims that "fail[] to state a claim upon which relief can be granted" by motion.  Under that rule, a complaint's factual allegations are accepted as true and viewed in the light most favorable to the plaintiff.  *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999) (citing *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999)).  "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations."  *Id.* (quoting *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998)).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And, as here, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Rule 12(b)(6) dismissals are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  In other words, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint fails to "show[] that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a)(2) and must be dismissed.  *Id.* at 679.

Applying that standard, this Court should dismiss Plaintiffs' complaint with prejudice.

ARGUMENT

## I.   This Court lacks jurisdiction over Plaintiffs' threadbare complaint and should dismiss it.

The State Defendants are, at most, bystanders to the intraparty dispute at the heart of Plaintiffs' complaint.  Even assuming Plaintiffs have been injured by that dispute (and that's a stretch), Secretary Thurston did not cause that injury and is not a proper defendant in an action to resolve that dispute.  Plaintiffs therefore lack standing to sue Secretary Thurston, and he should be dismissed from this case.  Moreover, even if this Court thought the State Defendants were proper defendant, this Court should decline to resolve the intraparty dispute at the heart of this case because it is ongoing and not yet ripe.

### A.   Plaintiffs lack standing to sue the Secretary.

Plaintiffs' complaint should be dismissed because their threadbare allegations fail to establish standing to sue Secretary Thurston.  To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Young America's Found. v. Kaler*, 14 F.4th 879, 887 (8th Cir. 2021) (citation omitted).  An injury confers standing only if it is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted).  Plaintiffs always bear the burden to establish standing as an "indispensable part of [their] case."  *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  And plaintiffs cannot meet that burden "[w]ithout factual allegations plausibly alleging that [they] actually suffered some kind of injury." *Holmbeck v. Solomon*, 639 F. Supp.3d 829, 845 (E.D. Ark. 2022).  And "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief' that is sought."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up).

It is difficult to make heads or tails of virtually any part of the complaint.  Nevertheless, at best, Plaintiffs seem to suggest Secretary Thurston injured them in two ways.  Neither suffices for standing.  The first is Plaintiffs' allegation that Secretary Thurston injured them by "failing to recognize that the RPA has closed its primaries to nonparty members," Am. Compl. ¶ 88, and "failing to recognize that the RPA has new party rules and accepting the new rules as required by Arkansas law," *id.* ¶ 49.  The problem with that injury theory is that the law does not say anything about the Secretary's authority to "recognize" a party's decision to amend its rules or close their primaries.  To the contrary, state law grants parties the power to establish primary-eligibility qualifications by "party rules," Ark. Code Ann. 7-7-307(a), and it is the parties—not Secretary Thurston—that adopt those rules and resolve disputes about them.  *See* Ark. Code Ann. 7-3-101(a)(3) (parties must "[e]stablish rules and procedures for their own organization").  To be sure, Arkansas law does require parties to provide "current copies of its adopted rules and procedures" to both the Secretary and the State Board of Election Commissioners.  Ark. Code Ann. 7-3-101(b)(1).  But critically, nothing gives Thurston—whether in his role as Secretary or as the Chair of the SBEC—the power to adjudicate intraparty conflicts regarding the interpretation or application of a party's rules.  Nor do Plaintiffs cite any authority giving Secretary Thurston that power.

The second injury Plaintiffs appear to allege is Secretary Thurston's purported "fail[ure] to take action to effectuate the changed status of conducting closed primaries."  Am. Compl. ¶ 48.  But that claim fares no better because the Secretary does not conduct primary elections. Very much to the contrary, Arkansas law provides that "political party primary elections shall be conducted by the county board of election commissioners."  Ark. Code Ann. 7-7-201(b)(1). Hence, if a party were to close its primary elections, it would ultimately be up to county, not state, officials to "effectuate" that change.  Thus, Plaintiffs again fail to allege that Secretary Thurston has injured them.

Moreover, Plaintiffs' reference to Secretary Thurston's role as chairman of the SBEC does not change the analysis.  Granted, Arkansas law gives SBEC the authority to "[a]ssist the county board of election commissioners in their performance of administrative duties of the election process," including in primary elections.  Ark. Code Ann. 7-4-101(7).  But critically, the problem for Plaintiffs is the same as above: that provision does not give the SBEC Chair the power to "effectuate" the change that Plaintiffs allege the RPA approved.  *See* Ark. Code Ann. 7-4-101(e)(2) (requiring a "majority of the membership of" SBEC to "constitute a quorum for conducting business").  So Plaintiffs haven't alleged an injury—let alone one that can be remedied by an order to the Secretary in that capacity.

Finally, to the extent that Plaintiffs mean to suggest that their injury is simply the lack of new rules or the lack of a closed primary, the complaint still fails the standing analysis.  That is because, as discussed, Secretary Thurston does not have the power to resolve intraparty disputes, deem rules enacted, or close the primary.  So there is simply no "causal connection between [those purported] injur[ies] and the [Secretary's] conduct," *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015) (quotation omitted), and an order to Secretary

Thurston would not redress that purported injury.  Either way, the Court should dismiss the Secretary from this case.

      **B.**      **Secretary Thurston is immune from suit.**

      For the same reason that Plaintiffs lack standing to sue, Secretary Thurston has immunity from suit.  "The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).  The Eleventh Amendment also bars suits brought against state officials if "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotations omitted).  "Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).  But for the doctrine to apply, the official must have "some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017).  Even where a state official has generalized enforcement authority over an area of law, it only satisfies the "some connection" requirement "if that authority gives the [official] *methods* of enforcement." *Church v. Missouri*, 913 F.3d 736, 749 (8th Cir. 2019) (emphasis original).

      As explained above, the Secretary has no enforcement power with respect to a party's decision to open or close its primary elections, nor does he have legal authority to adjudicate intra-party disputes.  The *Ex Parte Young* exception to sovereign immunity doesn't apply, and this Court lacks jurisdiction over Plaintiffs' claims against Secretary Thurston.

      **C.**      **Plaintiffs' alleged dispute regarding "closed" primaries is not ripe.**

      This Court should decline to exercise jurisdiction because it is too early to know whether any injury will actually materialize.  A lack of ripeness is a "prudential reason[] for refusing to exercise jurisdiction." *Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010).

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).  "Ripeness requires a court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *KCCP Tr. v. City of N. Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005) (quotation omitted).

Plaintiffs' complaint centers on an intraparty dispute about primary elections, but the next primary election is not until May 2026.  *See* Ark. Code Ann. 7-7-203(b).  Given the lack of specificity of the allegations in the complaint, it is impossible to know what might change over the next eighteen months that could affect Plaintiffs' lawsuit.  *See Utah Republican Party v. Cox*, 892 F.3d 1066, 1093 (10th Cir. 2018) (declining to resolve conflict between political party rules and state law on ripeness grounds and instead "maintain[ing] the status quo").  As the complaint itself notes, "the election for a new RPA Executive Board occurs December 2024."  Am. Compl. ¶ 34.  Given that and other potential intervening events, it would be premature for this Court to consider Plaintiffs' allegations at this juncture.  And as explained below, *infra* pp. 13-14, adjudicating Plaintiffs' vaguely defined and conclusory federal constitutional claims requires the resolution of threshold state-law question about party rules.  That alone counsels in favor of waiting for the factual issues in this case to sharpen before exercising jurisdiction.

## II.   Plaintiffs fail to plausibly allege a First Amendment violation.

On the merits, Plaintiffs claim that the State Defendants' failure to take sides in this intraparty dispute and to do what he lacks the authority to do violates the First Amendment.  To be sure, states can violate the First Amendment when they intrude too much into a political party's membership decisions and organizational affairs.  But critically, Plaintiffs do not allege that Arkansas has done that.  Nor could they since Arkansas law leaves parties free to make their own

decisions, allowing them to adopt their own rules governing membership, primary participation, organizational management, and dispute resolution.  Instead, Plaintiffs claim that the State Defendants' failure to take sides in an intraparty dispute violates the First and Fourteenth Amendments.  That claim fails as a matter of law.

A.  Political parties enjoy "the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (internal citations omitted).[2]  But "[s]tates have a major role to play in structuring and monitoring the election process, including primaries," and they "may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion." *Id.* at 572.  Where state law "does not regulate" a party's "internal processes, its authority to exclude unwanted members, or its capacity to communicate with the public," it imposes only a "slight[] burden" and passes constitutional muster. *Clingman v. Beaver*, 544 U.S. 581, 590 (2005).  "When a state electoral provision places no heavy burden on associational rights, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* at 593 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

Applying that standard, Arkansas's political-party regulations easily pass muster.  Under Arkansas law, political parties may "[e]stablish rules and procedures for their own organization,"

---

[2] The Arkansas Supreme Court has interpreted the relevant free-speech provisions of the Arkansas Constitution as being coextensive with the First Amendment.  *See Kelley v. Johnson*, 2016 Ark. 268, at 25 ("Article 2, section 6 governs the rights of free speech and freedom of the press, and it is Arkansas's equivalent to the First Amendment."); *Thurston v. League of Women Voters of Arkansas*, 2024 Ark. 90, at 16 & n.26 (describing section 4 and 6 of article 2 of the Arkansas Constitution as "Arkansas' first amendment provisions").

Ark. Code Ann. 7-3-101(a)(3), including the procedures for resolving disputes, and they enjoy the power to set "qualifications . . . for eligibility to vote in primary elections of the party," Ark. Code Ann. 7-7-307(a).  Parties are thus free to choose the manner of primary election that best suits their goals.  They may select open or closed primaries and, in some instances, may also nominate via convention.  Arkansas therefore places no burden on RPA members' right to associate or not associate with whomever they like in party activities.  And consequently, any claim that Arkansas has unduly burdened Plaintiffs' First Amendment rights fails as a matter of law.

B.  Unsurprisingly given that, Plaintiffs' complaint does not claim that Arkansas law unduly burdens their First Amendment rights.  Instead, Plaintiffs simply assert that by failing to resolve an intraparty dispute, Arkansas has somehow violated their First Amendment rights.  But that is little more than a thinly veiled attempt to transform a state law claim about whether an organization failed to follow its own rules into a federal constitutional claim.  And that is a question better resolved by state courts.  So this Court should dismiss the complaint.

Nevertheless, if this Court were to reach that state-law question, Plaintiffs cannot prevail, and their federal claims still would fail as a matter of law.  Again, Plaintiffs claim that the state convention validly amended the RPA rules and adopted closed primaries and that party officials wrongly concluded otherwise.  But the Arkansas Supreme Court has historically been very reluctant to involve the courts in the day-to-day management of political parties and to assume the role of arbiter of party rules.  To the contrary, it has left that role to party executives.  In fact, nearly a century ago, the Arkansas Supreme Court rejected the suggestion that a political party's "central committee or its officers . . . have a right to make rules but no right to interpret them." *Williamson v. Montgomery*, 51 S.W.2d 987, 989 (Ark. 1932).  Rather, it held that "when the party makes a rule governing its procedure, and in good faith interprets that rule, the court has no

14

authority to substitute its interpretation for that of the committee." *Id.* at 990.  And that high de-

gree of deference respects political parties' First Amendment interest in freely associating on the

terms agreed to by their membership, rather than having terms imposed by a court.  So that ap-

proach hardly imposes an undue burden or violates the First Amendment.

Moreover, the RPA rules that Plaintiffs attached to the complaint reflect that same ap-

proach, granting the state executive committee the power to "enforce" party rules.  Compl. Ex. A

at 42; *see also id.* at 5 (noting that the state convention "shall be deemed to have delegated such

interim authority to the State Committee and Executive Committee as is necessary to carry out

the purposes and objectives of the party").  And tellingly, Plaintiffs do not allege that the votes

taken at the state convention regarding closed primaries were in accordance with RPA rules, in-

cluding multiple provisions in Article 1, Section 6 limiting the convention's authority.  *See*

Compl. Ex. A at 10-12; *supra* pp. 3-4.   Thus, as the complaint recounts, party executives voted

to "nullify" the votes taken on matters "that were not previously approved and recommended by

the Rules and Platform Committee" because those votes were "in violation of the RPA rules."

Am. Compl. ¶ 21; Compl. Ex. A at 11-12.  Given those admissions, it is hard to see how Plain-

tiffs could possibly demonstrate—as state law requires—those actions were not taken in "good

faith," *Wiiliamson*, 51 S.W.2d at 989.  And deferring to those rules does not impose an undue

burden or violate the First Amendment.

C.   Finally, Plaintiffs also mention a claim under the Fourteenth Amendment's Due Pro-

cess Clause to "fully participate in the franchise of elections."  Am. Compl. ¶ 6.  State action

"implicating the right to vote" is reviewed under the same burden-shifting standard that applies

to Plaintiffs' First Amendment claims.  *See Org. for Black Struggle v. Ashcroft*, 978 F.3d 603,

607 (8th Cir. 2020). Their due-process claim thus fails for the same reasons as their First Amendment claim. The complaint should be dismissed.

### III.  The Court should dismiss Plaintiffs' state-law claims because their requested remedy would violate *Pennhurst*.

The final discernible claim in Plaintiffs' complaint is that the State Defendants are "failing to recognize that the RPA has new party rules and accepting the new rules as required by Arkansas law." Am. Compl. ¶ 48-49. They seek declaratory, mandamus, and injunctive relief requiring the State Defendants to "adopt" or otherwise recognize "the rule changes" in accordance with state law. *Id.* ¶ 54. "[T]his argument fails as a matter of law because the Eleventh Amendment bars [this] court from ordering state officials to conform their conduct to state law." *Greene v. Dayton*, 806 F.3d 1146, 1149 (8th Cir. 2015) (citing *Pennhurst*, 465 U.S. 89. Plaintiffs' claims under the Arkansas Civil Rights Act, Am. Compl. ¶ 4, the Arkansas Constitution, and any remaining state-law claims, must therefore be dismissed.

Alternatively, the Court can decline to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3); *ACLU v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999). Indeed, "comity favors allowing the [Arkansas] courts to resolve" the "unanswered[] question" of state law upon which Plaintiffs' federal claims rest. *Id.* at 1099.

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' amended complaint.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI (2016097)
  Solicitor General
DYLAN L. JACOBS (2016167)
  Deputy Solicitor General
OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
(501) 682-2591 (fax)
Dylan.Jacobs@arkansasag.gov